May it please the court. Grant Smith on behalf of Riordan Maynard. I want to turn first to the restitution issues. The restitution order as it currently stands is illegal for two people because it includes uncharged and non-criminal conduct. The MVRA limits restitution to the specific conduct that formed the basis of the conviction. This court need only look at the indictment in this case and the jury verdict form in this case to see that Mr. Maynard was not charged with failing to provide the promised employer match to the 401k funds. He was charged with embezzling the payroll deductions from his employees. Thus the restitution could only or the restitution order could only include losses stemming from that charge conduct. Moreover the government couldn't charge Mr. Maynard with failing to provide the promised employer match because that's not criminalized under 18 USC 664. The government has already conceded as much in front of the Supreme Court and the Supreme Court accepted that concession. So on that basis... Does the district court in these cases have the discretion to look broadly to see what the effect of the loss is and upon whom? No. The district court is strictly limited by the statutory bounds of the MVRA. And in that sense this court has interpreted the MVRA to limit the error was that it included losses for conduct that was not charged. The restitution order is also illegal because it exceeds the losses that the victims in this case suffered. Particularly the restitution order requires Mr. Maynard to pay not only the premiums that were embezzled but also the unpaid medical bills. Aren't those all losses? That is one is a loss of coverage. You know you're rolling along thinking you can go to a doctor and they'll be fine. And then the other is a loss of not being covered on a real actual bill that you receive once you've been treated. No. This court will look to the economic realities when it determines what the losses are. And the economic reality is that no one receives free health insurance. And that's the position that the victims are put in this case. Their medical bills are paid for and they don't have to pay anything to get that insurance coverage. That exceeds the loss that they actually... And you also claim that the normal deduction should be subtracted from the award, correct? I think on remand, yes, that would be an appropriate consideration of what those losses actually were in terms of what they would have actually had to pay if they didn't have health insurance or if they did have health insurance. Some of these people actually had big medical occurrences and others may have not. And so they may have different views of whether they would want to choose return of the premium that was stolen or they want to have the coverage. How would you do that? I do. Well, I believe the court should be... The victims probably should be given the discretion on which election they want to choose. But also, I think the court's obligated to order the higher amount. So if their unpaid medical bills exceed their premiums that were embezzled, then they would get that higher amount for the unpaid medical bills. But what the district court can't do is order both. Because again, that puts them in a position of free health insurance, which just doesn't exist in this country. So the court should remand for the district court to correctly calculate this restitution order. I want to move on now to Mr. Maynard's challenge to his health care fraud convictions, the 18 U.S.C. 669 convictions. I think it's really important to note at the offset that this statute is intended to protect public and private health care companies. It's intended to prevent fraud against Medicare and Medicaid. And Congress expanded it to also include private insurance companies. It's referred to as the health care fraud statute. The government's theory in this case is that the contract between TouchBase Global and the two insurance companies qualified as the health care benefit program. So then the next question is what assets belong to that contractual relationship between TouchBase Global and these two insurance companies? And the answer to that is there were no assets that belong to that contractual relationship. Isn't the expectation a right to payment an asset? The chosen action could be considered an intangible property right. However, Mr. Maynard did not interfere with that chosen action. He didn't embezzle that chosen action. And the two insurance companies elected to just retroactively cancel the insurance plan instead of seeking to enforce the terms of the contract. Well, what difference does that have? That has to do with remedy. It doesn't have to do with violation. Right. So the point would be that the assets were never the deductions from the employees' paychecks. The assets under that contractual relationship would be the chosen action, an intangible property right where they could elect how they want to enforce the contract. Well, in Luna, this court held that a future interest in the collection of contractually owed contributions was enough to be a property right for the plan. Two points as to Luna. First, I really want to distinguish between these convictions that are coming under 664 and the analysis under ERISA because there's no reason to believe that that employee-focused statute and regulations should be imported into health care fraud. But second, as to Henry Luna and your point that it's holding, I think it only goes so far in light of the government's concession in the United States v. Jackson, which the Supreme Court accepted, where they detailed that the only property right is the chosen action. The actual assets or the payroll promise match or a payroll deduction do not constitute an asset in that sense. And the government's brief in Jackson lays this out really succinctly and very well. So the two insurance companies do have an interest in enforcing the terms of that contract. That's their asset. However, the assets are not what was deducted from the employee paychecks. Well, those deductions, aren't they, according to the Department of Labor's regulations, aren't those deductions to go within 90 days to the insurance companies? No. So the Department of Labor, I want to push back again that I don't think the Department of Labor regulations has any role to play in defining what an asset is under 669. It would make no sense to import a Bureau of Land Management regulation into 669. This is a statute concerned with health care fraud. Where those definitions apply is in the context of 664, which is a statute focused on preventing employee welfare benefit plan fraud and embezzlement. And courts have routinely adopted those definitions in that context. And in fact, the Department of Labor regulations in its definition section references 18 U.S.C. 664. So it makes sense to apply that when you're trying to figure out what an asset is to an employee welfare benefit plan. It doesn't make sense in this context. Why? I mean, an asset is a term of art in legal parlance, and we generally interpret things based on their plain meaning, and a right to payment is an asset. I agree that this court, when a statute, as Inri Luna says, when a statute doesn't define the term asset, this court will look to the common law, and specifically the common law of property and contracts. But what the Department of Labor regulations do is they create this specialized definition of when a payroll deduction can be considered an asset, essentially in order to cover that gap in the common law for the purposes of protecting employees under ERISA and under 18 U.S.C. 664. If we focus on 669 being a healthcare fraud statute, then it doesn't make sense to incorporate that very specialized meaning of an asset that's contained in the Department of Labor regulations that's intended to protect employees, not healthcare companies. So if we don't look at the Department of Labor, and we're just looking at the statute that's before us, then don't we turn to the plain meaning of asset, because there is no definition in the statute. I don't need the Department of Labor to tell me what asset means. I can just turn to our own decisions defining an asset, can't I? Well, you can't take Enri Luna as far as it goes. You can take it up to the step of where it says that the unpaid employer contributions constitute an asset. Because the government has conceded that's not correct in front of the Supreme Court, so that would overrule that. But you are right that you look to the common law meaning of the term. And in this context, it wouldn't be while the two insurance companies would have an asset that includes its chosen action, it doesn't have an asset that's those specific payroll deductions from the employee paychecks. I mean, you could think also in terms of... Why isn't it? I mean, those monies are earmarked to go to those health insurance companies. Don't they have an interest in that? I mean, that's how they survive. Well, I think to explain that you have to look at the history of this statute a little bit in that this is intended to protect federal funds. It was modeled after 18 U.S.C. 641 defrauding the federal government. So what they're interested in is when someone steals from Medicare or Medicaid or these federally allocated dollars, the statute is not intended to criminalize someone who just fails to pay a debt. And that's what this case is. So you would say, well, in a Medicare fraud case, the victim is the government. But in this case, there is no victim. In this case, there's no victim under this statute. I think that exposes the weakness in the government's cases. They're ordering restitution, identifying the victims as the employees in this scenario. But that's not what 669's purpose is. Its victim is supposed to be Medicare or Medicaid or a private insurance company. Can we have two victims? I'm sure the statute would allow for that. But these statutes are clear that... ...expecting the monies to come in the mail or however, and they weren't received. So isn't everybody harmed, the employee and the company? Yeah, undoubtedly, there's two parties that were harmed by this. But that doesn't mean that this is the correct statute for criminalizing that conduct. If their theory is that these assets belong to the contractual relationship between TouchBase Global and UnitedHealth, then they have to show that there was an actual asset that belonged to that contractual relationship. Your argument is that this is not a health care benefit program. Is that what you're saying? No, we agree that the contractual relationship between TouchBase Global and the two insurance companies is a health care benefit program. What this is not is an employee wellness benefit plan, which is where you get all these definitions under ERISA, these specialized definitions of what assets belong to that plan. This should have been prosecuted under 18 U.S.C. 664, not 18 U.S.C. 669. I'd like to reserve the remaining of my time for rebuttal. Thank you. May it please the court, Aaron Teitelbaum for the United States. I'd like to start where we left off with the health care fraud 18 U.S.C. 669 convictions. Just briefly on the issue of preservation, I don't think I need to belabor this, but I would urge the court to read the entire transcript of the Rule 29 motion hearing because I think what's clear from reading the entire transcript is there's a great deal of confusion at the beginning of that argument from defense counsel about when he says the word count. He's actually referring to some of the manner and means inside of count one in the indictment. He's just mistakenly saying count instead of manner and means number one. And you can tell that because at one point he refers to count four and refers to 433B forms. But the manner and means, the only place that there's a talk about 433B forms is in number four of the manner and means for count one. And so really there's a great deal of confusion about what counts he's directing his argument about until the end when the district court says, can you please back up for a second and tell me what counts are you trying to have dismissed on Rule 29? And he says very explicitly, for appellate purposes, I'm moving for a judgment of acquittal on count one. And I think one of the reasons it's clear that that's what defense counsel was doing and that's what the district court properly understood is because the district court only ever ruled on count one. District court didn't then move to the other counts. And your point is that we're reviewing under plein air? That is my point. And I do agree with defense counsel that I don't think that there would really be any dispute about the third or fourth elements of plein air. Obviously, we can't have people serving sentences for counts where there was insufficient evidence. But I do think that the plein air analysis matters here because, first of all, whether there was an error in the first place, but certainly also whether there was an error that was clear or obvious because we're talking about fine grained distinctions between different types of employee benefit plans. And so I want to address what defense counsel is saying because I respectfully disagree with his characterization of the government's theory with regard to the benefit plan. The government's theory at trial was the health care benefit program at issue was the company's health plan embodied in documents or really more of just the vehicle that was used to connect touch base employees with health insurance. And so that satisfies the definition of a health care benefit program at 18 U.S.C. 24B because it was a public or private plan or contract under which a medical benefit was being provided to individuals. It's just the company's health plan, not the insurance company's, but the actual plan maintained by the company itself. And one thing I'd like to point out, I think, is the reason that all of these ERISA regulations and the Department of Labor regulations are relevant for this case because defense counsel is correct. We didn't charge this as theft from an ERISA plan or from an employee welfare benefit plan under 664 is that a health care benefit program also fits within the definition of an employee welfare benefit plan under ERISA. So in the government's answer brief, we've provided both the definition of a health care benefit program under 18 U.S.C. 24B and the definition of an employee welfare benefit plan under 29 U.S.C. 1002. And the touch bases health plan fits under both of those definitions. It was both a health care benefit program under Title 18 and it was also an employee welfare benefit plan under Title 29. And so while I don't think that necessarily these concepts lend themselves that well to being put in sort of the boxes and diagrams that defense counsel used in his reply brief, I do think that the reference in the reply brief where there are the blue boxes, I believe it's on page 14 of the defendant's reply brief where he said where he says that Mr. Maynard embezzled assets from the employee welfare benefit plan. It's the box blue box on the right hand side. First of all, the government agrees with that characterization and also would just add that that employee welfare benefit plan is also a health care benefit program within the meaning of 18 U.S.C. 669. So it violated both steps. Because 669 and looking at the issue that's been raised by the defendant in connection with that, how does that become assets of the government? In other words, you're saying in the testimony that said that after 90 days when he took that, that became money that belonged to the government. And I don't follow how you don't in your brief give us any citations, regulations, statute. And the defendant seems to be jumping on that a little bit and I'm a little bit confused by what's going. How does that money in 90 days under what regulation or statute become an asset of the government? Thank you, Your Honor. And I disagree with defense counsel. This the 669 charges have absolutely nothing to do with government assets. The Labor Department regulations that the government cites, those are instructing administrators of employee benefit plans at companies as to when their employees contributions to certain benefits become assets of the plan that the company is maintaining. It has nothing to do with government assets. And I think, for instance, the definition of a health care benefit program at 18 U.S.C. 24B, which is the relevant definition here, it means any public or private plan or contract. There's no requirement that this be a government entity or asset here. And so you're saying that in 90 days, it did not become an asset of the government. No, that's correct, Your Honor. I don't think that whether something became the it did not become an asset of the government and also whether something became an asset of the government is not relevant for this charge. It became an asset of the company's health plan that it was maintaining for its employees. And so we're we're looking at these Department of Labor regs just for the purpose of having employers and their plans and those that work in this area to know how things should occur. That's correct, Your Honor. And so and also to understand, at least under the law, one way of looking at when those employee paycheck deductions became assets of TouchBase's health plan. I believe it was Judge McHugh who suggested that even without that regulation, we could still get to this point because the employees were earmarking these contributions to the health plan from the moment that it left their paychecks. I just think that the labor regulations that the government's witness did testify about at trial do add some extra reinforcement to that notion that the employee contributions did belong to the health plan. If there are no more questions about this section. I would like to know what the government conceded in U.S. v. Jackson and how it applies to this case. My understanding of what the government conceded, and this was something that was done at the Solicitor General level, is simply that employer contributions to an employee benefit plan are not plan assets under ERISA. So the concession of the government in that case is not particularly relevant here because here we are only talking about employee contributions, and that part of the trial in Jackson was left undisturbed by the Solicitor General's concession. It went back to the Fourth Circuit after the Solicitor General conceded that, and those 669 convictions in Jackson remained undisturbed. It was really just a question of the employer contributions being plan assets. So I just don't think that that concession affects our case very much or really at all. If I could just say something briefly about the tax loss, I think that, as this court has said somewhat recently in United States v. Vernon, which the government cited, the key focus here is the intended loss. It's not the loss that was caused by the aggregation of all of the defendants' actions. It's not the resulting loss. It's the intended loss. And so looking at it in that lens, as the guidelines require, I think what that shows is that the district court's calculation of loss was reasonable, but it was also actually quite conservative because the trial evidence showed that Mr. Maynard was trying to pay nothing over to the IRS, or at least the bare minimum that he possibly could. And sometimes those efforts to not pay money over were unsuccessful because the IRS found out what he was up to, but ultimately the focus needs to be his intent. It's not the resulting loss. And so for that reason, I do think the district court was correct there. I think that the reply brief focuses a lot on the resulting loss, which is not the relevant calculation. Let me ask you about restitution, if we can. Under the Mandatory Victims Restitution Act, the goal is to make victims whole, but to not give them a windfall. I mean, isn't your opponent correct that if I want health care, I've got to pay a premium? And so if the remedy is you're going to treat me as if I have health care, you have to reduce the premium amount from any damage award? I disagree, Your Honor. I mean, first of all, I think we are, as the court's well aware, and as I believe the defense has conceded, we're talking about an error that has to be plain. But I don't think there was error here in the first place because there's the protection that insurance provides from things that might happen, but then end up not happening. And then there's the protection from claims when something bad actually does happen. So if we go a whole year without having anything bad happen to us, we're not allowed to then go back to the insurance company and say, well, I didn't break my leg or have any health issues this year, so you need to give me all my premiums back. They would say, nonsense, we were covering you for the risk that something might happen. And that remains the same regardless of whether or not you have a health event. You're still, even if you have a serious health event in one year, you're still paying your premiums for protection from a whole bunch of other things that thankfully did not happen to you on top of that. But in order to have the health protection, I have to pay a premium. I don't get the health, I don't get full recovery, I don't get a fairy godmother who comes in and pays my medical bills without requiring me to pay a premium. So it seems to me that if the idea is to make them whole, that you do have to consider that they would have had to pay a premium and that they would have had to pay deductibles. So I think the deductibles is a different issue. I think that premiums plus unpaid claims, it makes sense to compensate the victims for both in order to compensate them for the full amount of the loss because the premiums protect against all risks, including things that didn't actually happen to you. And then the unpaid claims protect you from when you actually get sick and have to go to the doctor. As far as the deductibles, I think that the district court has some latitude in fashioning a reasonable restitution order. And here, I think there's also issues that weren't ever really addressed at the district court level, but their employees could have suffered Affordable Care Act penalties or they could have had difficulty getting coverage from other insurance companies because of the lapse in coverage. So I do think that there's some play in the joints here, especially when we're on plain error review, when we're dealing with deductibles and things like that, because I do think that in all likelihood, some employees may have suffered greater losses beyond just their premium payments and the unpaid claims. The last thing I'd like to say regarding the employer match is that there was also a conspiracy charge in the indictment, which covered the employer match. And I see my time has expired. I'd ask that you affirm. Thank you. Thank you, counsel. We have some rebuttal time. First, I just want to clarify that even with the conspiracy charge, the government didn't charge him in the indictment with promising employer match. That's just not true. They charged one instance where he emailed one employee and told her that they would match. So the court can't affirm on that basis because the district court didn't order restitution as to count three. It's very clear in the judgment. It's four through 13. But even if the district court could, it wouldn't because that's not charge conduct. And I just want to clarify Jackson and hopefully really winnow the issue in this case of Jackson's incredibly relevant because it details what an asset is under the common law. And that's what's guiding this court's analysis. It shouldn't incorporate the specialized definition of asset under ERISA. The statute doesn't define the term. So this court will look to the common law under the common law and asset was our touch. Our two insurance companies could not call the payroll deductions in asset in reference to their contractual relationship with touch base global. Thank you. Thank you both for your arguments this morning. The case is submitted and the court is adjourned.